UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DANIELLE NICOLE SACHS,

    Plaintiff,

v.     Case No. 5:22-cv-314-KKM-PRL

RICKY DIXON, et al.,

    Defendants.

_____

## ORDER

Plaintiff Danielle Nicole Sachs, through counsel, brings claims for cruel and unusual punishment and deliberate indifference under 42 U.S.C. § 1983 and for negligent supervision and statutory liability under Florida law. (Doc. 1.) In her four-count complaint, Sachs names three Defendants: the Secretary of the Florida Department of Corrections (FDOC), Ricky Dixon, in his official capacity for violating Florida Stat. § 768.28 (Count IV); the Warden of Lowell Correctional Institution (Lowell CI), Stephen Rossiter, in his individual capacity for deliberate indifference and negligent supervision (Counts II and III); and a former corrections officer, Jacob Tourbin, in his individual capacity for cruel and unusual punishment (Count I).

Tourbin filed an answer, (Doc. 16), but moves to strike portions of the complaint, (Doc. 15). Secretary Dixon moves to strike the same portions of the complaint and moves to dismiss Count IV, arguing he is entitled to Eleventh Amendment immunity. (Doc. 9.) Finally, Warden Rossiter moves to dismiss Counts II and III. (Doc. 19.) Sachs partially opposes Secretary Dixon's motion, (Doc. 17), but concedes her claim against him may not proceed in federal court and therefore asks the Court to dismiss Count IV "*in toto*" without prejudice, so she may pursue her claim in state court, (*id.* at 3). Because Sachs may not proceed in federal court on a claim for damages against Secretary Dixon in his official capacity,[1] the Court dismisses Count IV without prejudice, and denies as moot Secretary Dixon's motion to strike.

Sachs opposes Warden Rossiter's motion to dismiss. (Doc. 20.) Having considered Rossiter's motion and the response, the Court grants the motion as to Counts II and III but permits Sachs to file an amended complaint. As a result, Tourbin's motion to strike is denied as moot.

## I. FACTUAL BACKGROUND

Sachs is a state inmate housed at Lowell CI, "the largest women's prison in the country." (Doc. 1 ¶ 15.) Her claims arise from an alleged sexual assault by then-Officer

---

[1] "Under the Eleventh Amendment, state officials sued for damages in their official capacity are immune from suit in federal court." *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994).

Tourbin that occurred on June 16, 2021. (*Id.* ¶¶ 1, 5.) Sachs alleges Tourbin "pushed [her] . . . up against [a] wall . . . . [and] violently squeezed her breasts, then put his hands down the front of [her] pants and rubbed her vaginal area." (*Id.* ¶ 63.) Based on the filing of an anonymous PREA[2] grievance, the matter was investigated and, per policy, Sachs was placed in administrative/solitary confinement. (*Id.* ¶¶ 40-42, 66-67.) Warden Rossiter "concluded that no wrongdoing had occurred." (*Id.* ¶ 68.) In Count I, Sachs brings an Eighth Amendment cruel and unusual punishment claim against Tourbin. (*Id.* ¶¶ 72-75.)

Sachs brings two claims against Warden Rossiter for his failure to remediate an alleged "pattern of forced sexual submission imposed by [prison] employees upon her and other numerous female inmates." (*Id.* ¶¶ 4, 6.) In Count II, brought under § 1983, Sachs alleges Warden Rossiter was deliberately indifferent to the alleged "widespread pattern of sexual and physical abuse," (*id.* ¶¶ 76-82), and in Count III, brought under state law, Sachs alleges Warden Rossiter negligently supervised prison staff, (*id.* ¶¶ 83-89). Sachs alleges Warden Rossiter's disregard of his duties, including inadequate staffing, supervision, training, and policymaking, and his deliberate indifference to Sachs's safety directly or proximately caused the sexual assault by Tourbin. (*Id.* ¶¶ 82, 89.)

---

[2] PREA stands for "Prison Rape Elimination Act."

Sachs dedicates much of her complaint to describing what she characterizes as "a culture of lawlessness" at Lowell CI. (*Id.* ¶¶ 15-55.)[3] In one paragraph in particular, Sachs alleges multiple prior incidents of staff abuse or misconduct, some of which led to criminal charges against Lowell CI staff. (*Id.* ¶ 19.) Sachs also references a report issued by the Department of Justice (DOJ) Civil Rights Division in 2020 (DOJ Report), which "cit[ed] repeated instances of sexual and physical abuse [against the inmates] stemming from a culture of lawlessness and systemic lack of supervision," in part attributable to staffing shortages. (*Id.* ¶ 20.) According to Sachs, the DOJ found that the "FDOC and Lowell [CI] are violating the Constitution by failing to protect prisoners from serious harm," and that "women at Lowell [CI] are not safe from abuse by staff." (*Id.* ¶¶ 21, 30.)

Sachs alleges Warden Rossiter failed to "undertake[] sufficient efforts to change [the] culture" of abuse by, for example, not ensuring sufficient staffing, which "results in inadequate supervision and creates an unacceptably high risk of sexual abuse by creating the opportunity for staff to engage in misconduct without detection." (*Id.* ¶¶ 32, 34-36, 38.) She further alleges Warden Rossiter adopted or continued policies that discourage inmates from reporting instances of sexual abuse, including "always" sending inmates who

---

[3] Tourbin moves to strike these allegations because, according to him, they concern "inmates who are not parties to this case and have absolutely no bearing on the Plaintiff's claim in the current action." (Doc. 15 ¶ 4.)

report sexual abuse to segregated housing where they are denied access to certain privileges. (*Id.* ¶¶ 39-43.)

## II. ANALYSIS

### A. Motion to Dismiss Standard

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). This tenet, of course, is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

### B. Warden Rossiter's Motion to Dismiss

Warden Rossiter seeks dismissal of both Counts II and III. As to Count II, Warden Rossiter asserts two grounds for dismissal. First, Warden Rossiter asserts that Sachs does not allege "she was deprived any federal right by [him]" while he was acting "under the color of state law." (Doc. 19 at 3.) Second, Warden Rossiter invokes qualified immunity, asserting Sachs does not allege the violation of a clearly established constitutional right. (*Id.* at 6.) Because the qualified immunity analysis depends on whether Sachs states a plausible claim for relief, the Court will address both arguments together.

"[S]ection 1983 provides a method for vindicating federal rights conferred by the Constitution and federal statutes." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 997 (11th Cir. 1990) (citations omitted). To successfully plead a § 1983 claim, a plaintiff must allege two elements: "(1) that the act or omission deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law." *Id.* at 996–97 (citations omitted).

Qualified immunity protects a government official acting within his discretionary authority from civil lawsuits unless his conduct violates a statutory or constitutional right clearly established when the alleged violation occurred. *Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013). The doctrine protects "all but the plainly incompetent or those who

knowingly violate the law." *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). If an official demonstrates he was engaged in a discretionary function, the burden shifts to the plaintiff to overcome the official's qualified immunity by meeting a two-part test. *Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005). First, she must show that the official violated a constitutional right. *Id.* This first step of the qualified immunity inquiry mirrors the Rule 12(b)(6) analysis, requiring a court to analyze the specific constitutional right at issue and decide as a matter of law if the official violated such a right. *Id.* at 1156–57. Second, if a violation occurred, the plaintiff must then show that the right was clearly established at the time of the incident. *Id.* at 1156.

Warden Rossiter contends, "[Sachs's] allegations . . . clearly state that [he] was acting within his discretionary authority as an employee of the [FDOC] and warden as [sic] [Lowell CI]," (Doc. 19 at 6), which Sachs does not dispute, (Doc. 20 at 8-10).[4] Consequently, the burden shifts to Sachs to show that Warden Rossiter violated a clearly established constitutional right. Sachs contends Warden Rossiter knew inmates, including

---

[4] Warden Rossiter contends that Sachs does not allege he acted "under the color of state law" but Rossiter invokes qualified immunity, which applies only to state actors. Regardless, Sachs alleges she sues Rossiter for actions (or inactions) he took or policy decisions he made as the warden of Lowell CI and while "acting under color of law." (Doc. 1 ¶¶ 1, 11.)

herself, were in danger of being sexually assaulted, yet he remained deliberately indifferent to that risk, implicating Eighth Amendment protections.[5] (*Id.* ¶¶ 76-82.)

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prison official violates this prohibition if he is deliberately indifferent to a substantial risk of serious harm to an inmate who suffers injury. *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016); *see Farmer*, 511 U.S. at 843. To state an Eighth Amendment claim of deliberate indifference, a plaintiff must allege facts sufficient to show: (1) a substantial risk of serious harm; (2) the defendant's deliberate indifference to that risk; and (3) that the injury was caused by the defendant's wrongful conduct. *Lane*, 835 F.3d at 1307; *see Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). The second element of the claim "has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Lane*, 835 F.3d at 1308 (quoting *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003)).

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003),

---

[5] Sachs references both the Eighth and Fourteenth Amendments in her complaint. (Doc. 1 ¶ 7.) Because Sachs was a convicted state prisoner at the relevant times, her claims arise under the Eighth Amendment, not the Fourteenth. *See Crocker v. Beatty*, 995 F.3d 1232, 1246 (11th Cir. 2021).

*abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). Instead, to hold a supervisor liable a plaintiff must show "that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." *Keith v. DeKalb Cnty., Ga.*, 749 F.3d 1034, 1047–48 (11th Cir. 2014). It bears emphasizing that—unlike state claims of vicarious liability—the standard for supervisory liability is "extremely rigorous." *Piazza v. Jefferson Cnty., Ala.*, 923 F.3d 947, 957 (11th Cir. 2019) (quoting *Cottone*, 326 F.3d at 1360).

Absent a supervisor's direct participation in the alleged conduct, a plaintiff may establish the requisite causal connection for supervisory liability in one of three ways: (1) "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation"; (2) "when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights"; or (3) when the supervisor directed or knew subordinates would act unlawfully. *Cottone*, 326 F.3d at 1360. A claim premised on a supervisor's knowledge of prior unconstitutional deprivations requires the plaintiff to show the prior deprivations were "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). *See also Goebert v. Lee Cnty.*, 510 F.3d 1312, 1332 (11th Cir. 2007) ("Demonstrating a

9

policy or custom requires 'show[ing] a persistent and wide-spread practice.'" (quoting *Depew v. City of St. Mary's, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986))).

Sachs does not allege Warden Rossiter directly participated in a constitutional violation. Rather, she alleges he knew or should have known of "a widespread pattern of physical and sexual abuse, harassment, and threats against the inmates at Lowell [CI]" and allowed that pattern of abuse to continue by failing to adopt or implement policies that would protect inmates or by "adopt[ing] policies and practices [that] enable[d] sexual abuse of prisoners by staff." (Doc. 1 ¶¶ 18, 19, 34.)

In support of her allegation of a "widespread pattern of . . . abuse," Sachs references multiple prior instances of physical and sexual abuse against inmates by corrections officers between 2014 and 2019, and points to the 2020 DOJ Report, which allegedly found there was "a culture of lawlessness and systematic lack of supervision [at Lowell CI]" that placed inmates "at substantial risk" of being physically and sexually abused. (*Id.* ¶¶ 19-22, 30.) In support of her allegation regarding policy deficiencies, Sachs references staffing issues and a policy about handling PREA complaints. She alleges Lowell CI was inadequately staffed at times in 2016 and 2017 and had high turnover rates between May 2018 and May 2019, permitting sexual assaults to go undetected and that "sexual abuse victims are routinely placed into in [sic] involuntary segregated housing where they must forfeit access to regular

programming, services, their property, canteen items, phone access, and visitation from family." (*Id.* ¶¶ 37, 39, 41.)

Sachs fails to allege *when* Rossiter became the warden of Lowell CI. (*See generally id.*) Although Sachs alleges that Rossiter was the warden "[a]t all times material" to her claims, (*id.* ¶¶ 10-12), she acknowledges that some of the referenced incidents supporting her supervisory liability claim occurred "prior to . . . the time [Warden] Rossiter assumed responsibility for [the inmates'] safety," (*id.* ¶ 19). Indeed, Sachs alleges that the "culture of lawlessness" already existed at Lowell CI when Rossiter became the warden, but Rossiter allowed the abuse to continue "unabated" by failing to implement effective policies or by making no more than "token efforts to remediate the systemic culture of disfunction." (*Id.* ¶¶ 25, 31-32, 55.)

Based on inferences from the complaint's allegations, Rossiter may have become the warden after November 2019. (*Id.* ¶¶ 31-32, 52, 54.) For instance, Sachs alleges as follows: "In November 2019, the DOJ asked the *former* warden, *current* warden and an OIG supervisor" about PREA complaints by inmates. (*Id.* ¶ 54, emphasis added.) In the next paragraph, Sachs alleges, "After undertaking the role of warden at Lowell [CI,] Rossiter has continued these adopted policies . . . ." (*Id.* ¶ 55, capitalization omitted.) Sachs never alleges directly when Rossiter served as the warden of Lowell CI, and she never alleges what the "adopted policies" were that Rossiter permitted to govern Lowell CI.

11

If Rossiter became the warden after November 2019, Sachs fails to allege facts showing a causal connection between her constitutional injury and Rossiter's conduct. Of the multiple incidents of abuse Sachs references in paragraph 19 of her complaint—some of which do not involve sexual assault or even physical assault—only one occurred after November 2019, and it involved the alleged unlawful use of "pepper spray" against an inmate. (*Id.* ¶ 19.)[6] Even if this one incident had involved sexual assault or was attributable to a policy implemented or overlooked by Warden Rossiter, it does not establish or permit the reasonable inference that "widespread abuse" existed or continued "unabated" when Rossiter was the warden. *See Piazza*, 923 F.3d at 957; *Goebert*, 510 F.3d at 1332. Notably, Sachs does not allege that any incidents of sexual assault occurred at Lowell CI after November 2019. (*See* Doc. 1 ¶ 19.) To the extent that the "repeated instances of sexual and physical abuse" referenced in the DOJ Report are the same ones Sachs references in paragraph 19 of her complaint, they do not establish the requisite causal link. The same is true for the alleged inadequate staffing and the policy of segregating inmates who claimed to have been the victims of sexual abuse, both of which appear to have predated Warden Rossiter's tenure at Lowell CI.

---

[6] In another paragraph, Sachs references an inmate who publicly complained about the "abhorrent conditions" at Lowell CI in 2021, but those complaints related to nutrition and prenatal care, not sexual or even physical abuse. (Doc. 1 ¶ 33.)

As alleged, it appears Rossiter became the warden of Lowell CI after the alleged "culture of lawlessness" had been allowed to permeate the institution. If true, and assuming Rossiter knew about the history at Lowell CI as alleged in Sachs's complaint, Sachs's assertion that the "culture of lawlessness" continued unabated after Rossiter became the warden is conclusory and not supported with factual allegations. In other words, Sachs's allegations do not permit the reasonable inference that a culture of lawlessness persisted *after* Rossiter became the warden or, if it did, that Rossiter was deliberately indifferent to it. Warden Rossiter cannot be held liable for a predecessor's deliberate indifference to unsafe prison conditions.

Based on the above deficiencies, Count II must be dismissed with leave to amend. If Sachs repleads this claim and Warden Rossiter moves to dismiss again on qualified immunity grounds, he must provide briefing that develops the relevant legal analysis. (*See, e.g.*, Doc. 19 at 6 (referencing the First Amendment—instead of Eighth—and otherwise failing to meaningfully analyze why the right was not clearly established).)

As to Count III, Sachs alleges that Warden Rossiter breached his duty to protect inmates at Lowell CI by failing to adequately supervise corrections officers, including Tourbin, causing the sexual assault of which she complains. (Doc. 1 ¶¶ 83-89.) Her negligent supervision claim is based on the same factual allegations supporting her § 1983 claim in Count II. (*Id.* ¶ 83.) Warden Rossiter argues Sachs does not state a plausible claim

for negligent supervision against him because she fails to allege he "had any knowledge of [Officer] Tourbin's unfitness" or that, with such knowledge, "placed [Sachs] under [his] supervision." (Doc. 19 at 4-5.) In response, Sachs contends Rossiter, as the warden, had a non-delegable duty to protect inmates and "to investigate Tourbin's [two] previous incidents of misconduct," which were "sexually motivated." (Doc. 20 at 13.)

Under Florida law, an employer may be liable for an injury his employee causes but only if "the employer becomes aware or should have become aware of problems with [the] employee that indicated his unfitness, and the employer fails to take further actions such as investigation, discharge, or reassignment." *Dep't of Env't Prot. v. Hardy*, 907 So. 2d 655, 660 (Fla. 5th DCA 2005). To state a claim for negligent supervision, a plaintiff must allege (1) the employer had "actual or constructive notice of an employee's unfitness"; and (2) the employer failed to take appropriate action. *Id. See also Doe v. Carnival Corp.*, 470 F. Supp. 3d 1317, 1321, 1324 (S.D. Fla. 2020) (dismissing the plaintiff's negligent supervision claim because she did not allege the employer (a cruise line) had knowledge of the offending employee's unfitness but rather alleged that a certain group of employees—to which the plaintiff did not allege the offending employee belonged—were "prone to rape" passengers).

Sachs does not allege Warden Rossiter had actual or constructive knowledge of Tourbin's unfitness. In fact, contrary to what she says in her response (Doc. 20), Sachs does

14

not allege Tourbin engaged in any conduct suggesting he was unfit. (*See generally* Doc. 1.) She makes no mention of him having been involved in two "sexually motivated" incidents. (*Id.*) Rather, Sachs alleges Warden Rossiter "knew, or should have known, of a pattern of violations . . . by Lowell [CI] officers and staff." (*See id.* ¶¶ 83, 85.) Allegations that other corrections officers committed sexual assaults in the past are insufficient to establish Tourbin himself engaged in such conduct or was otherwise known to be unfit so as to give Rossiter actual or constructive notice. *See Carnival Corp.*, 470 F. Supp. 3d at 1324. Accordingly, Count III is dismissed without prejudice. Because the Court directs Sachs to amend her complaint, she may attempt to replead this count.

### III. Conclusion

For the foregoing reasons, the following is **ORDERED**:

1. Secretary Dixon's Motion to Dismiss and to Strike (Doc. 9) is **GRANTED in part** to the extent Count IV is **dismissed without prejudice**. The motion to strike is **DENIED as moot**.

2. Defendant Tourbin's Motion to Strike (Doc. 15) is **DENIED as moot**.

3. Warden Rossiter's Motion to Dismiss (Doc. 19) is **GRANTED**. Counts II and III are **DISMISSED without prejudice**.

4. The Court directs the **Clerk** to terminate Secretary Dixon as a party to this action.

5. Sachs may file an amended complaint no later than **March 31, 2023**, amending only the two claims asserted against Warden Rossiter (deliberate indifference, Count II, and negligent supervision, Count III). If Sachs fails to do so, the Complaint will proceed against Tourbin only.

**ORDERED** in Ocala, Florida on March 14, 2023.

_____
Kathryn Kimball Mizelle
United States District Judge